UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEFTALI BONILLA,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>ON HABEAS CORPUS,<br><br>　　　　　Respondent. | Case No. 1:18-cv-00687-NONE-JDP<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR HABEAS CORPUS AND TO DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS<br><br>ECF No. 1 |

Petitioner Neftali Bonilla, a state prisoner without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. Petitioner claims that (1) his constitutional rights were violated by the Miranda warning given by the police investigator; (2) the trial court erred in admitting text messages written by petitioner;[1] and (3) the trial court gave an erroneous jury instruction. *Id*. at 4-5. Respondent argues that petitioner's first claim is procedurally barred and that his remaining claims are not cognizable, or, in the alternative, are meritless. *See* ECF No. 16 at 11-16. For the reasons stated below, we recommend that the court deny the petition.

## I. Background

In 2014, a jury sitting in Tulare County Superior Court convicted petitioner of second-degree murder with gang and firearm enhancements. ECF No. at 1. Petitioner was sentenced to

---

[1] Petitioner's fourth claim concerns the phone used to send the text messages in question and will be considered along with claim two. *Id*. at 5.

1

15 years to life for second-degree murder and 25 years to life for the firearm enhancement. *Id*. We set forth below the facts of the underlying offenses, as stated by the California Court of Appeal. A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

**Factual Summary**

> As a teenager, defendant became a member of the South Side Kings gang, which is a subset in Tulare County of the Sureño gang.[2] Several years later, on the night of June 6, 2013, there was a drive-by shooting at a residence on West Vine Street in Visalia. Two teenagers were hit by the gunfire and wounded. One of the teenagers, Alex V., was a Sureño gang member.
>
> The next night, a group of gang members that included defendant and Angel Espindola gathered at the residence on West Vine where Alex V. had been shot the night before.[3] Espindola and others wanted defendant to go with them to find a "Northerner." Thereafter, around 11:30 p.m., a shooting was reported. When police arrived, they found Jose Garcia, a member of the North Side Visas, a subset of the Norteño gang and a rival of the Sureños, lying dead on West Vine. Garcia had been shot multiple times. Still in his right hand was a large .44 Magnum revolver with six spent shell casings in the cylinder.[4] Police located casings and a live bullet comprised of three different calibers, but the only gun ever recovered was the victim's revolver.
>
> The police searched residences on the north side of West Vine, ultimately focusing on two houses, including the one where Alex V. was shot the night before. Espindola was discovered in one of the bedrooms of the house, in the process of changing clothes. He was sweating profusely and pulling on a red shirt.[5] A black and gray striped shirt was found under some other clothing in the bedroom, along with some shoes with fresh mud on them. Defendant was subsequently arrested after he jumped the back fence of the house into an empty field and ran.
>
> Defendant was interrogated by detectives at the police station for approximately two hours and his statement was admitted at trial. He admitted being present when Garcia was shot on West Vine, but

---

[2] Defendant testified he was jumped into the gang at age 16, but his involvement or association with gangs began when he was 13 or 14 years old.

[3] Alex V. apparently lived next door to the house where he was shot. Defendant knew Alex V. and testified he, Espindola, and Espindola's cousin Matthew went to Alex's house on West Vine to check on him. Because Alex was still in the hospital and his family was not home, they went next door.

[4] The victim's gun retained spent casings in the cylinder rather than ejecting them after firing.

[5] This was notable because the color red is associated with the Norteños.

initially denied being armed. He next admitted he was armed, but denied firing his gun; then admitted firing one time, and finally admitted firing three times, including once at Garcia. At trial, defendant testified and denied being armed or firing a gun. He stated he felt "peer pressur[ed]" to say he shot three times and he lied about shooting a gun because he wanted to go home.

Defendant was not alone that night and, during interrogation, he said Espindola and two Asian men he identified as Dominic and Ainoy Saesee were with him when they encountered the victim. At trial, defendant testified he was with four others: Espindola, Espindola's cousin Matthew, Dominic, and an Asian man.[6] Gunshot residue tests conducted the night of the shooting were positive for the victim, Espindola, and Michael See, and inconclusive for defendant, Dominic and Ainoy Saesee.

Two eyewitnesses to the shooting testified at trial. The first witness told police he saw a man in a gray and black striped shirt and two other men in white shirts carrying "rifle type guns" heading westbound on West Vine. They were shooting westward but he was unable to see who they were shooting at. He stated there were "too many shots to count," and he identified Espindola as the main shooter wearing the striped shirt. In a second statement to police, he reported seeing the victim firing shots. At trial, he testified reluctantly that he heard three shots; saw a group of three people, one of whom was carrying a rifle or a shotgun; and saw the person with the long gun shooting, but did not see what he was shooting at.[7]

The second witness testified he heard eight or nine gunshots, dropped to the ground, and saw muzzle flashes, possibly from two guns. During this time, he saw two guys in the middle of the street wearing white shirts, but he was unable to identify anyone.[8] He later saw defendant jump the fence and get apprehended by police.

*People v. Bonilla*, No. F070035, 2016 LEXIS 6681, at *2-7 (Cal. Ct. App. Sept. 12, 2016) (footnotes in original).

---

[6] A positive result indicates the discharge of a firearm or presence in an environment of gunshot residue. An inconclusive, or negative, result could indicate any of the following: a firearm was not discharged, a firearm was discharged but did not deposit gunshot residue on the hands, or a firearm was discharged but the residue was removed. It is also possible there was gunshot residue present but just not in the area sampled.

[7] The witness's prior inconsistent statements to police were introduced at trial. (Evid. Code, §§ 1235, 770).

[8] The victim was found in an extremely dark area of the street, and defendant was wearing a black shirt. Detective Jennings testified when he canvassed the neighborhood and stood in the area where the witnesses were located, he was unable to view the area where evidence markers Nos. 2 and 8 were located, a location consistent with the area defendant's statement and trial testimony placed him.

**II.     Discussion**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See Harrington v. Richter*, 562 U.S. 86, 97 (2011). To decide a § 2254 petition, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims, *see Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). In general, § 2254 requires deference to the state-court system that determined the petitioner's conviction and sentence.

Under AEDPA, a petitioner may obtain relief on federal habeas claims that have been "adjudicated on the merits in state court proceedings" only if the state court's adjudication resulted in a decision (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

If obtaining habeas relief under § 2254 is difficult, "that is because it was meant to be." *Richter*, 562 U.S. at 102. As the Supreme Court has put it, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id.* at 103 (citation omitted). Our habeas review authority serves as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (emphasis added).

This court applies the deferential standard of § 2254 to the last reasoned opinion in this case—here, that of the Court of Appeal.

        **A.     Miranda Warning**

Petitioner contends that the Miranda warning given to him by the police investigator was deficient and misleading, causing him involuntarily to waive his right to an attorney during the interrogation. ECF No. 1 at 4; *see Miranda v. Arizona*, 384 U.S. 436, 471 (1966). The Court of

Appeal expressly found under state procedural rules that petitioner forfeited his opportunity to challenge the sufficiency of the Miranda warning on appeal. *See Bonilla*, No. F070035, 2016 LEXIS 6681, at *9-11.

"[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994). State rules are "adequate" if they are "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Id*. at 1010. State rules are "independent" if they are not "interwoven with federal law." *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). Here, the Court of Appeal expressly found that petitioner "forfeited" his Miranda claim under California's contemporaneous objection rule by failing to object at trial to the admission of the interview obtained after the Miranda warning. *See Bonilla*, No. F070035, 2016 LEXIS 6681, at *11; Cal. Evid. Code § 353 (Deering's 1967) ("A verdict . . . shall not be set aside . . . by reason of the erroneous admission of evidence unless there appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion.").[9]

The Ninth Circuit has repeatedly held that California's well-established contemporaneous objection rule is an adequate and independent state ground for dismissal. *See, e.g.*, *Rogers v. Soss*, 775 F. App'x. 879, 879, (2019); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004). Additionally, the court relied exclusively on state law in finding petitioner's claim to be forfeited, citing five California state cases to support its conclusion. *See, e.g.*, *People v. Crittenden*, 9 Cal. 4th 83, 126 (Cal. Ct. App. 1994) ("[A] defendant must make a specific objection on Miranda

---

[9] We find the Court of Appeal's statement that "defendant neither sought to suppress his statement prior to trial nor objected at trial" reasonable considering the trial record. *Bonilla*, No. F070035, 2016 LEXIS 6681, at *10. Before the trial, the prosecution moved for the admission of the police interview, arguing that the Miranda warning was adequate. CT 1:125. The trial court stated that it would allow reference to the interview in the prosecution's opening statement and would rule on the admissibility of the statement before the officer testified. RT 1:7-9. Defense counsel did not object. *Id*. The trial court later ruled on the admissibility of the interview prior to the officer's testimony about the interview, finding no Miranda violation. *Id*. at 249. Again, defense counsel did not object.

grounds at the trial level in order to raise a Miranda claim on appeal."); *People v. Mattson*, 50 Cal. 3d 826, 854 (Cat. Ct. App. 1990). There is no evidence that the appellate court relied on any federal law in finding petitioner's claim barred. Therefore, we find that the Court of Appeal expressly rejected petitioner's claim on adequate and independent state procedural grounds.

A petitioner may overcome a procedural bar on federal habeas review if he can show cause for the default and prejudice or that a failure to consider the claim will result in a fundamental miscarriage of justice. *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). "[O]nly where a prisoner is impeded or obstructed in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default." *Strickler v. Greene*, 527 U.S. 263, 289 (1999). "The fundamental miscarriage of justice exception is available only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." *Herrara v. Collins*, 506 U.S. 390, 404 (1993). Here, petitioner has neither argued that he was impeded or obstructed from following the state's procedural rule, nor has he argued that a fundamental miscarriage of justice will result from failure to consider the claim. Therefore, petitioner has not overcome the procedural bar on this claim and we decline to review the claim's merits.[10] *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

### B. Admission of Text Messages

Petitioner claims that the trial court abused its discretion, violating petitioner's due process rights, when it admitted irrelevant and prejudicial text messages into evidence. ECF No.

---

[10] Although the Court of Appeal discussed the merits of petitioner's claim in an alternative holding, we are still barred from considering the merits of this claim. *See Loveland v. Hatcher*, 231 F.3d 640, 643 (9th Cir. 2000) ("[I]f the state court's reliance upon its procedural bar rule was an independent and alternative basis for its denial of the petition, review on the merits of the petitioner's federal constitutional claims in federal court is precluded."). Even if we were to consider petitioner's claim on the merits, his claim would fail. Law enforcement have a duty to "reasonably convey" Miranda warnings to a suspect and courts need not "examine the words employed as if construing a will or defining the terms of an easement." *See Florida v. Powell*, 559 U.S. 50, 60 (2010). Here, the officer said, "Um, there's just some for—some formal stuff that we have to do sometimes. Ever—do you ever watch like crime shows at all? You ever watch COPS and all that kind of stuff?" Petitioner responded, "Yeah." The officer then said, "You remember—do they ever bring out a card like this and they whip it at you and say you have the right to remain silent?" Petitioner responded, "Yeah." The officer then said, "And anything you say may be used against you in court. You have the right to have an attorney present before

1 at 4. The phone in question was found in petitioner's possession at the time of arrest.[11] CT 1:100; RT 1:270-272. In relevant part, the text messages referred to doing "the thing" around "10:30, 11," CT 2:316, and were sent a "reasonably short time before the alleged shooting, RT 1:12.[12] Citing the closeness in time between the messages and the crime, the trial court found the messages probative of planning and admitted them over the objections of defense counsel. *Id*. at 11-12. The Court of Appeal rejected petitioner's claim on the merits and the California Supreme Court summarily denied relief. Therefore, we review the Court of Appeal's rejection of petitioner's claim on the merits.

Federal habeas relief is not available for alleged violations of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue a writ [of habeas corpus] on the basis of a perceived error of state law."). Here, the trial court considered both the relevance and the potentially prejudicial nature of the text messages under California Evidence Code § 352. *See* RT 1:12. We will not review the reasonableness of the Court of Appeal's decision to uphold the trial court's evidentiary ruling under state law. Moreover, "[t]he Supreme Court has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Therefore, to gain relief,

---

and during any questioning and if you cannot afford to hire an attorney one will be appointed to represent you free of charge before and during any questioning if you wish. Did you understand all that?" And respondent answered, "Yeah." CT 1:144. Despite the officer's reference to television shows to describe the Miranda warning, the officer recited all the rights memorialized in Miranda and asked petitioner if he understood the rights. *Id*. This warning "reasonably conveyed" petitioner's rights, as required under *Powell*.

[11] Petitioner's fourth claim for federal habeas relief is "providing false evidence." ECF No. 1 at 5. Petitioner claims that the phone used to send the text messages was not his. Although petitioner did not explicitly exhaust this claim at the state level, we may still reach the merits if it is "perfectly clear" that petitioner "failed to present a colorable federal claim." *See Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). Because petitioner generally claims that the text messages from the phone in question should not have been admitted, we consider the merits of his claim here.

[12] There is some discrepancy as to the exact time the messages were sent. However, the Court of Appeal's finding that the text messages were sent within twelve hours of the shooting is reasonable in light of the evidence presented at trial. *See Bonilla*, No. F070035, 2016 LEXIS 6681, at *23.

7

the petitioner must show that either "the admission of evidence . . . rendered the trial fundamentally unfair in violation of due process," *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 67-68), or that the Court of Appeal's decision was "based on an unreasonable determination of the facts in light of the evidence presented," 28 U.S.C. § 2254(d).

Here, the evidence in question showed that the text messages sent by petitioner in the twelve hours before the shooting and referenced doing "the thing" at "10:30, 11."[13] CT 2:316. Although petitioner argues that the phone was not his, the jury heard evidence that the phone was found in petitioner's possession at the time of arrest. RT 3:498. Petitioner himself referred to the phone in question as "my phone" during his trial testimony. *Id*. The jury was free to make reasonable inferences from the evidence presented. Petitioner has failed to show how admission of the text messages rendered his trial fundamentally unfair in violation of due process or that the Court of Appeal made an unreasonable determination of the facts in light of the evidence presented. Therefore, we recommend that the court decline to grant relief on petitioner's claim.

**C.      Jury Instruction**

Petitioner claims that the trial court erred when it instructed the jury with the Judicial Council of California Criminal Jury Instruction 361 ("CALCRIM 361"), which permits, but does not require, the jury to consider a defendant's failure to explain or deny evidence offered against him at trial.[14] ECF No. 1 at 5. Petitioner argues that the instruction signaled that the trial court "did not believe" his testimony, thereby causing a violation of his Fourteenth Amendment rights. *Id.* The Court of Appeal found that the trial court had "no basis for instructing the jury on the failure to explain or deny adverse evidence," but ultimately found any error harmless. *Bonilla*,

---

[13] The shooting was reported at 11:30 pm on the day of the incident.

[14] CALCRIM 361 states: "If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People must still prove the defendant guilty beyond a reasonable doubt. If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure."

| | |
|---|---|
| 1 | No. F070035, 2016 LEXIS 6681, at *33-35.  The California Supreme Court summarily denied |
| 2 | relief on the claim.  Therefore, we will review the Court of Appeal's harmless error ruling. |
| 3 | When "a state court determines that a constitutional violation is harmless," as the Court of |
| 4 | Appeal has done here, "a federal court may not award habeas relief under § 2254 unless *the* |
| 5 | *harmlessness determination itself* was unreasonable." *Fry v. Pliler*, 551 U.S. 112, 119 (2007) |
| 6 | (emphasis in original).  Harmless error is found where a constitutional error had a "substantial |
| 7 | and injurious effect or influence" on either a jury verdict or a trial court decision. *Brecht v.* |
| 8 | *Abrahamson*, 507 U.S. 619, 623 (1993).  A state-court decision is not unreasonable if "fairminded |
| 9 | jurists could disagree on [its] correctness." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). |
| 10 | Petitioner must show that the state court's harmless error determination "was so lacking in |
| 11 | justification that there was an error well understood and comprehended in existing law beyond |
| 12 | any possibility for fairminded disagreement." *Id*. |
| 13 | In making its harmless error determination, the Court of Appeal considered the "strong |
| 14 | evidence of defendant's guilt," including petitioner's confession to the crime, physical presence |
| 15 | near the scene of the crime, gang affiliation, and attempt to flee police. *See Bonilla*, No. |
| 16 | F070035, 2016 LEXIS 6681, at *33, 35.  This consideration is supported by the record, especially |
| 17 | in light of petitioner's own trial testimony that contradicted his statements to the police.  RT |
| 18 | 3:489, 497, 502-03.  The appellate court also considered the effect of other instructions given at |
| 19 | trial that may have served to counteract any prejudice arising from CALCRIM 361. *Id*. at 34. |
| 20 | Finally, the court considered the permissive nature of CALCRIM 361—the jury was permitted to |
| 21 | consider petitioner's failure to explain or deny evidence against him, but this failure did not, by |
| 22 | itself, permit a finding of guilt.  Petitioner has presented no evidence that the jury failed to follow |
| 23 | the instruction; we must assume the jury followed the instruction as given. *See Weeks v.* |
| 24 | *Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the |
| 25 | "almost invariable assumption of the law that jurors follow their instructions").  Petitioner has |
| 26 | failed to show how the Court of Appeal's harmlessness determination was "so lacking in |
| 27 | justification that there was an error well understood and comprehended in existing law beyond |
| 28 | any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 101.  Therefore, we |

recommend that petitioner's claim be denied.[15]

**III.     Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing § 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, petitioner has not made a substantial showing of the denial of a constitutional right. Thus, we recommend that the court not issue a certificate of appealability.

**IV.     Findings and Recommendations**

We recommend that the court deny the petition for a writ of habeas corpus, ECF No. 1, and decline to issue a certificate of appealability. These findings and recommendations are submitted to the U.S. District Court judge presiding over this case under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document must be captioned "Objections to Magistrate Judge's Findings and

---

[15] Even in the absence of the instruction, the jury was free, in general, to draw inferences from the testimony of petitioner. Indeed, "[a]n accused who takes the 'stand may not stop short in his testimony by omitting and failing to explain incriminating circumstances and events already in evidence in which he participated and concerning which he is fully informed, without subjecting his silence to the inferences to be naturally drawn from it.'" *Green v. Busby*, No. CV 11-01844 DOC (SS), 2011 U.S. Dist. LEXIS 151010, at *10 (C.D. Cal. Dec. 1, 2011) (quoting *Caminetti v. United States*, 242 U.S. 470, 494 (1917)).

10

Recommendations." The district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated: April 9, 2020

_____
UNITED STATES MAGISTRATE JUDGE

No. 206.

11